J-A27019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF NICHOLAS A. NOTARNICOLA, A/K/A NICHOLAS A. NOTARNICOLA, JR., A/K/A NICHOLAS NOTARNICOLA, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: AUDREY GRAJCZAR | No. 2079 WDA 2014 |

Appeal from the Order Entered August 18, 2014
In the Court of Common Pleas of Armstrong County
Orphans' Court at No(s): 03-11-00014

BEFORE: BOWES, OLSON & STABILE, JJ.

MEMORANDUM BY OLSON, J.:                     **FILED JANUARY 21, 2016**

Appellant, Audrey Grajczar, appeals from the order entered on August 18, 2014,[1] dismissing her exceptions to a final accounting decree, directing the distribution of assets in the estate of Nicholas A. Notarnicola ("the Estate"), and denying Appellant's motion for discovery as moot. Upon review, we quash the appeal for lack of jurisdiction.

The trial court summarized the facts and procedural history of this case as follows:

> On March 15, 2001, Nicholas A. Notarnicola ("Decedent") executed a power of attorney that designate[d] his nephew, Michael Zanolli, as his agent (the "POA"). In the POA, Decedent generally grants Zanolli the power to "transact all of my business and to manage all my property and affairs as I might do if personally present…." The POA further

_____

[1] Appellant avers this appeal lies from an order entered on November 25, 2014. However, as discussed below, the appeal lies from the order dated August 18, 2014. We have changed the caption accordingly.

enumerate[d] several specific grants of power to Zanolli, which include[d] the following:

(1)  To exercise any power or take any action on my behalf, as fully and completely as I could do myself, which my Agent in my Agent's sole discretion believes to be in my best interest. …

*          *          *

(3)  To draw checks against any bank account, brokerage account or any other account in my name; to make deposits or withdrawals and to transfer funds from one account to another; to open any close any accounts and to sign signature cards and any other documents required for such purpose.

*          *          *

(8)  To make, do and transact all and every kind of business whatsoever, including the receipt, recovery, collection, payment, compromise, settlement and adjustments of all accounts, legacies, bequests, dividends, annuities, demands, debts, taxes and obligations which may now or hereafter be due, owing or payable by me or to me;

*          *          *

(15)  To exercise any rights which I have with respect to any policies of insurance on my life of which I am the owner or in which I have any rights including, but not limited to, the following:  the right to cancel and/or surrender the policy and to receive the cash value; the right to borrow all or part of the cash value; the right to convert the policy to a paid-up status; and the right to exercise any settlement options;

*          *          *

(16)  To take charge of my person in case of illness or disability of any kind; to authorize my admission to a medical, nursing, residential or similar facility, and to enter into agreements for my

care; to consent to surgical or other medical procedures; and to remove and place me in such institutions or places as my Agent may deem best for my personal care, comfort, benefit and safety after giving consideration to any wishes I have previously expressed on this subject.

(17) To make such gifts of my property to such persons and in such form and amounts as my Agent in my Agent's sole discretion believes are in my best interest.

Decedent also executed his Last Will and Testament on March 15, 2001. In it, Decedent directs first that his last funeral and healthcare expenses be paid and all of his property sold. The proceeds from the sale, together [with] all other remaining assets, are to be included in the residuary estate, which then is to be distributed in equal shares to the following six designated beneficiaries: Judith Lynn Vila, Gerald Zanolli, Michael Zanolli, Anthony Calabro, Nick Calabro, and Anthony Campobasso. Decedent appointed Michael Zanolli as executor.

For several years in the 1960s, Decedent worked for a company in Apollo, Pennsylvania that utilized radioactive materials in its operations. Decedent was exposed to such materials and later developed several health problems, including bladder cancer. Although it is not entirely clear from the record, sometime prior to 2008, [Appellant] became acquainted with Decedent and undertook to care for him as a live-in companion. In 2008, [Appellant] became aware of the United States Department of Labor's Energy Employees Occupational Illness Compensation Programs Act ("EEOICPA"), which provides monetary compensation to individuals beset with illnesses caused by certain enumerated workplace conditions.

[Appellant] assisted Decedent in preparing and submitting an application for benefits, on which she was designated as his authorized representative. On May 8, 2008, the Department of Labor awarded Decedent $150,000.00 in compensation, together with healthcare benefits for his bladder cancer. Shortly thereafter, on September 12, 2008, Decedent purchased a Prudential annuity contract in the

amount of $150,000.00, on which Decedent listed [Appellant] as the primary beneficiary (the "Annuity"). Decedent and [Appellant] also allegedly opened a joint checking account, although the record contains no evidence of such an account.

In early August 2009, because of her own advanced age and personal circumstances, [Appellant] moved out of Decedent's residence, as she was no longer able to meet the heavy demands of providing for his daily care. Thereafter, Zanolli placed Decedent in a skilled nursing facility in Monroeville, Pennsylvania. Although communication was difficult, Decedent and [Appellant] remained in contact. On or about August 3, 2009, Zanolli, relying on the POA, removed [Appellant] as the primary beneficiary of the Annuity and substituted himself as primary beneficiary. Sometime prior to September 2009, Zanolli removed himself and substituted the Estate as the primary beneficiary. No application or form requesting the latter change is included in the record, but the financial statements provided by Prudential beginning in September 2009 list the "Estate" as the primary beneficiary. Around the same time, Zanolli, again relying on the POA, accessed and negotiated the Annuity's cash value to provide for Decedent's healthcare needs, which included Decedent's placement in the skilled nursing facility and, ultimately, hospice care. All of Zanolli's transactions in changing the beneficiary of the Annuity and negotiating its cash value were approved by Prudential.

Decedent died on October 6, 2010. Letters Testamentary were granted to Zanolli as Executor of Decedent's will on January 12, 2011. Because not all of the Annuity's cash value had been utilized for Decedent'[s] care, the remaining funds, totaling approximately $67,000.00, were transferred into Decedent's residuary estate. Zanolli published notice of the probating of Decedent'[s] will on January 15, January 22, and January 29, 2011, in the local Valley News Dispatch newspaper. On May 16, 2011, [Appellant], via her counsel, sent a letter to Zanolli notifying him of her claim to both the Annuity and the joint checking account. Despite receipt of the letter, and apparently due to oversight, on or about September 22, 2012, Zanolli sent notice to the six named beneficiaries of Decedent's will, but not to [Appellant], of his

intent to file his First and Final Account.  Zanolli then filed the First and Final Account, together with a proposed distribution schedule, on October 2, 2012.  No objections or other challenges to the account were filed with the [c]ourt, which subsequently confirmed the account and entered a decree of distribution on November 2, 2012.  The decree distributes the cash value of Decedent's residuary estate, which includes the remaining funds from the Annuity, to the six beneficiaries named in Decedent's will.

[Appellant] filed exceptions to the [c]ourt's decree on November 21, 2012, in which she again assert[ed] her claims to the Annuity and joint checking account.  On November 27, 2012, the [c]ourt entered an order permitting the filing of exceptions and appointing Jack J. Steiner, Esq., as auditor.  For reasons not immediately apparent from the record, the [c]ourt did not schedule a hearing on the exceptions.  It also does not appear that the auditor conducted an audit of the First and Final Account, held a hearing on [Appellant's] exceptions, or prepared an auditor's report.  No further action was taken on the exceptions until the Estate filed [a] motion to dismiss on April 4, 2014, approximately 16 months after [Appellant] filed her exceptions.  [Appellant] responded to the Estate's motion and filed a motion for leave to conduct discovery. The [c]ourt heard argument on May 27, 2014, and scheduled a hearing on the motion to dismiss for August 1, 2014.  Thereafter, the parties submitted additional filings and documents to the [c]ourt and agreed that they would rest on their written submissions in lieu of a hearing.

Trial Court Opinion, 8/18/2014, at 2-7 (record citations omitted).

On August 18, 2014, the trial court entered an order and opinion granting the Estate's motion to dismiss.  The trial court also dismissed Appellant's exceptions by operation of law and on the merits and denied Appellant's discovery request as moot.  The trial court directed the Clerk of Orphans' Court "to enter on the docket that [Appellant's] exceptions were deemed denied by operation of law as of March 21, 2013."  Trial Court

Order, 8/18/2014, at 1. On September 8, 2014, Appellant filed exceptions to the trial court's August 18, 2014 decision. On November 25, 2014, the trial court entered an order denying and dismissing Appellant's September 8, 2014 exceptions, stating it "already [] ruled upon all of the issues raised in [Appellant's] second set of exceptions, the [c]ourt also [found] that ruling on a second set of exceptions would be improper under the Pennsylvania Rules of Orphans' Court Procedure[.]" Trial Court Order, 11/25/2014, at 1.

"We first address, *sua sponte,* the timeliness of this appeal because, if the appeal is late, we have no jurisdiction to entertain it." ***In re Estate of Allen***, 960 A.2d 470, 471 (Pa. Super. 2008). The trial court entered an order on November 2, 2012 confirming the First and Final Account filed by the executor and directing distribution of the Decedent's estate. Appellant filed timely exceptions on November 21, 2012. ***See*** Pa.O.C.R. 7.1(a) (setting twenty-day time limit for exceptions). The court issued no ruling on the exceptions. Accordingly, they were deemed denied by operation of law on the 121st day after their filing, specifically March 22, 2013. ***See*** Pa.O.C.R. 7.1(f) (setting time frame for denial by operation of law). On that day, the 30-day appeal period set by Pa.R.A.P. 903(a) began to run. ***See In re Estate of Allen***, 960 A.2d at 471; Pa.O.C.R. 7.1(f); Pa.R.A.P. 903(a). Thus, Appellant's notice of appeal filed on December 23, 2014 fell outside the 30-day appeal period. ***See*** Pa.R.A.P. 903.

Moreover, we have previously determined,

'in a decedent's estate, the confirmation of the final account of the personal representative represents the final order, subject to exceptions being filed and disposed of by the court.' ***In re Estate of Habazin***, 679 A.2d 1293, 1295 (Pa. Super. 1996). Rule 7.1(a) of the Pennsylvania Orphans' Court Rules generally provides that 'no later than twenty (20) days after entry of an order, decree or adjudication, a party may file exceptions to any order, decree or adjudication **which would become a final appealable order** under Pa.R.A.P. 341(b) or Pa.R.A.P. 342 **following disposition of the exceptions**.

***In re Wilton***, 921 A.2d 509, 512 (Pa. Super. 2007) (emphasis in original).

Thus, the November 2, 2012 order confirming the First and Final Account became appealable on the day the court disposed of Appellant's exceptions, *i.e.*, on August 18, 2014. Appellant filed her notice of appeal on December 23, 2014, also outside of the 30-day appeal period.[2] **See** Pa.R.A.P. 903. Thus, for all of the foregoing reasons, we lack jurisdiction to entertain Appellant's appeal.

Finally, we must address the Estate's motion to dismiss for Appellant's failure to file a designation of the contents of the reproduced record pursuant to Pa.R.A.P. 2154, filed on March 3, 2015. The Estate sought to have the appeal quashed or dismissed because Appellant failed to designate the contents of the reproduced record timely. On April 21, 2015, this Court

_____

[2] We note that Appellant's notice of appeal states that she is appealing "the [o]rder originally entered … on August 18, 2014" as well as "from the [c]ourt's [o]rder of November 25, 2014 disposing of [her] exceptions to" the August 18, 2014 order and opinion. Notice of Appeal, 12/23/2014, at 1. Appellant has not offered any legal authority, and our independent review has not revealed any, to suggest that she could file a second set of exceptions to toll the 30-day appeal period.

issued a *per curiam* order denying relief without prejudice for the Estate to raise the issue before the current panel. The Estate has not raised this issue again. Regardless, because we lack jurisdiction to entertain Appellant's appeal, the Estate's motion to dismiss is moot. Thus, we reaffirm the denial of the Estate's motion to dismiss for failing to designate the reproduced record in a timely manner.

Appeal quashed. Motion to dismiss denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2016